IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: NINA WHITE-ROBINSON, | § | |
| | § | |
| Debtor. | § | |
| | § | 3:12-CV-259-P |
| ------------------------------------------------------- | § | |
| NINA WHITE-ROBINSON (DEBTOR) | § | |
| AND MPATANISHI TAYARI | § | |
| GARRETT, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| COVENTRY II DDR/TRADEMARK | § | |
| MONTGOMERY FARM, L.P., | § | |
| | § | |
| Appellee. | § | |

## ORDER

Now before the Court are three separate appeals from the same underlying bankruptcy proceeding.[1] Appellants filed appeals of the Bankruptcy Court's: (1) Order of October 7, 2011 granting Creditor's Motion to Quash and Motion for Protective Order [doc. 15] filed on February 16, 2012 (the "First Appeal"); (2) Order of October 13, 2011 denying Debtor's Motion for Contempt and Sanctions [doc. 14] filed on February 16, 2012 (the "Second Appeal"); and (3) Order on December 6, 2011 Directing Chapter 7 Debtor's Counsel to Pay Reasonable Attorney's Fees and Expenses Incurred by Landlord, as a Result of Debtor's Frivolous Motion for Contempt and Sanctions Pursued Against Landlord [doc. 21] filed on March 7, 2012 (the "Third Appeal"). Appellee filed Responses on March 8, 2011 [doc. 22], March 8, 2012 [doc. 23], and March 27,

---

[1] The three appeals were transferred and consolidated into the instant case. The three appeals are docketed as numbers 3:12-cv-259-P, 3:12-cv-266-P, and 3:12-cv-482-P.

2012 [doc. 25], respectively.  Appellants filed a Reply as to the Second Appeal only on March

22, 2012.  (Doc. 24.)  After reviewing the parties' briefing, the record, and the applicable law,

the Court AFFIRMS the judgment of the Bankruptcy Court.

## I.      Background

What is a fairly routine fact pattern has escalated into a cause celebre which has now

involved two separate federal courts.   Debtor-Appellant Nina White-Robinson ("White-

Robinson") owned a boutique for which she leased space from Creditor-Appellee Coventry II

DDR/Trademark Montgomery Farm, L.P. ("DDR") beginning on October 21, 2009.  At some

point, White-Robinson began to fall behind in her rent payments and DDR eventually filed suit

in state court to recover the monies owed (the "State Court Suit").  On March 31, 2011, White-

Robinson filed a Petition for Chapter 7 Bankruptcy, case number 11-32080-sgj-7, which was

assigned to Judge Stacey Jernigan.   White-Robinson's counsel, Mpatanishi Tayari Garrett

("Garrett") sent notice of the filing to DDR by fax on the same day.

On July 20, 2011, Garrett, on behalf of her client White-Robinson, filed a Motion for

Contempt and for Sanctions (the "Motion for Contempt") against DDR alleging several

egregious violations of the automatic stay.  Among the allegations contained in the Motion for

Contempt, Garrett stated:

> (1) Jerry Donahue ("Donahue"), DDR's collection agent assigned to White-
> Robinson's debt, "resumed repeated calls to Debtor" after the Bankruptcy Petition
> was filed;
> (2) "[t]he bankruptcy filing, automatic stay and multiple notifications did not
> deter DDR from its aggressive collection efforts, however, because it then began
> demanding payments for pre-petition debt in the form of invoices";
> (3) DDR "relentlessly worked to thwart" White-Robinson's access to her personal
> items left in the boutique;
> (4) "DDR's correspondence and actions make clear its intent to play games with
> this Court's Orders and Debtor"; and

>    (5) "DDR has repeatedly flaunted this Court's Orders and violated the Automatic
>    Stay by failing to timely allow the Trustee and Debtor access to Debtor's
>    property."

(Doc. 1-2 at 10-14.)   Judge Jernigan held a hearing in regard to the Motion for Contempt on

August 22, 2011 in which the Bankruptcy Court received evidence and heard testimony

regarding the alleged violations.   At the conclusion of the hearing, the Bankruptcy Court

determined that a second hearing was necessary and set it for October 6, 2011.

On September 23, 2011, Garrett noticed DDR for a 30(b)(6) deposition of its corporate

representative to be taken on October 3, 2011.   For numerous reasons, DDR filed a Motion to

Quash and for Protective Order (the "Motion to Quash") on September 28, 2011.   On October 3,

2011, the Bankruptcy Court held a hearing regarding the Motion to Quash and, after receiving

evidence, granted the Motion.   The Court also awarded DDR $5,000 in sanctions against Garrett

"[d]ue to defects cited and due to the violation of the Court's previous directives that are inherent

in it and due to the fact the Court views it as unduly burdensome under all the circumstances."

(Doc. 1-1 at 18-19.)   Additionally, the Court held that Garrett would be sanctioned "reasonable

attorneys' fees and expenses incurred, and at the hearing on October 6 we will allow a

presentation of evidence on that." (Doc. 1-3 at 176.)   The Bankruptcy Court issued an Order

granting the Motion to Quash on October 7, 2011 and White-Robinson filed the First Appeal.

At the hearing on October 6, 2011, the parties again presented evidence related to White-

Robinson's Motion for Contempt.   The Bankruptcy Court held that White-Robinson and Garrett

made misstatements or fabricated allegations that DDR: made any phone calls to White-

Robinson after the Bankruptcy Petition date, sent multiple invoices to White-Robinson,

exercised control over property of the estate, or went forward in the State Court Suit. (Doc. 1-5

at 26-27.)   Based on the evidence, the Bankruptcy Court held that there were no willful

violations of the automatic stay and that White-Robinson suffered no damages. (*Id.* at 27-28.) The Bankruptcy Court then denied White-Robinson's Motion for Contempt on October 13, 2011. (*Id.* at 28.) White-Robinson and Garrett filed the Second Appeal in regard to this Order.

Based on the previous hearings and orders, and as it had warned at the October 6, 2011 hearing, the Bankruptcy Court issued an Order Directing Chapter 7 Debtor's Counsel to Appear and Show Cause Why She Should Not Pay Reasonable Attorney's Fees and Expenses Incurred by Landlord, as a Result of Debtor's Frivolous Motion for Contempt and Sanctions Pursued Against Landlord (the "Show Cause Order") on October 11, 2011. (*Id.* at 9.) Garrett filed a Response on November 21, 2011. (No. 3:12-cv-482-P, doc. 1-8 at 99-117.) On December 1, 2011, the Bankruptcy Court held a Show Cause Hearing. Based on the evidence, the Bankruptcy Court issued an Order Directing Chapter 7 Debtor's Counsel to Pay Reasonable Attorney's Fees and Expenses Incurred by Landlord, as a Result of Debtor's Frivolous Motion for Contempt and Sanctions Pursued Against Landlord (the "Sanctions Order") on December 6, 2011. (No. 3:12-cv-482-P, doc. 1-9 at 161-169.) Garrett filed the Third Appeal in regard to this Order.

## II.    Legal Standard & Analysis

### A.  Standard of Review

A district court has jurisdiction to hear appeals of final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1). The district court, sitting in review of a bankruptcy court's final decisions, reviews findings of fact for clear error and conclusions of law de novo. *Drive Fin. Servs., L.P. v. Jordan,* 521 F.3d 343, 346 (5th Cir. 2008); *Wells Fargo Bank of Texas, N.A. v. Sommers (In re Amco Ins.),* 444 F.3d 690, 694 (5th Cir. 2006). Mixed questions of law and fact are reviewed de novo as well. *Carol v. Quinlivan (In re Quinlivan),* 434 F.3d 314, 318 (5th Cir. 2005). A bankruptcy court's "findings of fact, whether based on oral or documentary

evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013. A finding is "clearly erroneous" when, even in the presence of supporting evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made. *In re Quinlivan,* 434 F.3d at 318; *Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 701 (5th Cir. 2003).

A district court may also hear interlocutory appeals of bankruptcy court orders with leave of the district court. 28 U.S.C. § 158(a)(3). Such interlocutory appeals are not favored, however, because they interfere with the overriding goal of the bankruptcy system. *In re Hunt Int'l Res. Corp.,* 57 B.R. 371, 372 (Bankr. N.D. Tex. 1985) (citing *Katchen v. Landry,* 382 U.S. 323, 328 (1966); *In re Durensky,* 519 F.2d 1024, 1028 (5th Cir. 1975)); *see In re Greene Cnty. Hosp.,* 835 F.2d 589, 595 (5th Cir. 1988) (finding bankruptcy court orders "that constitute only a preliminary step in some phase of the bankruptcy proceeding and that do not directly affect the disposition of the estate's assets [are] interlocutory and not appealable" (citing *In re Delta Servs. Indus.,* 782 F.2d 1267, 1270–71 (5th Cir. 1986)).

A bankruptcy court is vested with inherent authority to impose sanctions in its discretion. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); 28 U.S.C. § 1927 ("[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *see also* Fed. R. Civ. P. 37(b)(2)(C) ("[T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a Court Order]."); Fed. R. Bankr. P. 7037 (stating Rule 37 of the Federal Rules of Civil Procedure applies in the bankruptcy context); Fed. R. Bankr. P. 9011(c) (stating "the court may, subject to the conditions stated

below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation"). A district court reviews a bankruptcy court's decisions on discovery for an abuse of discretion. *In re Evangeline Refining Co.,* 890 F.2d 1312, 1321 (5th Cir. 1989) (citing *Salter v. Upjohn Co.,* 593 F.2d 649, 652 (5th Cir. 1979)). Similarly, a "bankruptcy court's decision to impose sanctions is discretionary, therefore we review the exercise of this power for abuse of discretion." *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel),* 108 F.3d 609, 613 (5th Cir. 1997).

When reviewing a bankruptcy court's decision, the district court must give due regard to the opportunity of the bankruptcy judge to weigh the evidence and determine the credibility of the witnesses. *In re Dennis,* 330 F.3d at 701; *Young v. Nat'l Union Fire Ins. Co. (In re Young),* 995 F.2d 547, 548 (5th Cir. 1993) (quoting Fed. R. Bankr. P. 8013). The appellant bears the burden of demonstrating that a finding of fact by the bankruptcy court is clearly in error. *Perry v. Dearing,* 345 F.3d 303, 309 (5th Cir. 2003). "As long as there are two permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous." *G.E. Capital Corp. v. Acosta (In re Acosta),* 406 F.3d 367, 373 (5th Cir. 2005) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 574 (1985)). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse it." *Id.* However, the district court "must independently determine the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Cadles Grassy Meadows II, L.L.C. v. Gervin (In re Gervin),* 300 Fed. App'x 293, 298 (5th Cir. 2008) (citing *Multi–Mart Branch Office, First State Bank v. Appliance Buyers Credit Corp. (In re Bufkin Bros., Inc.),* 757 F.2d 1573, 1577-78 (5th Cir. 1985)).

## B.  Appeal of the Motion to Quash Order

White-Robinson first appeals the Bankruptcy Court's Order granting DDR's Motion to Quash dated October 7, 2011.[2]  (Doc. 1-1 at 18-19.)  She argues that the Bankruptcy Court failed to apply Federal Rule 45 and failed to provide factual and legal basis for its determination.[3] White-Robinson had noticed the deposition of DDR's 30(b)(6) corporate representative (the "Subpoena") and, in response, DDR filed its Motion to Quash.  The Bankruptcy Court held a hearing on October 3, 2011 in which both parties had an opportunity to present evidence and argument in regard to the Motion.  (Doc. 1-3 at 129-79.)  After reviewing the parties' briefing, the evidence, and hearing oral arguments, the Bankruptcy Court granted the Motion to Quash and awarded $5,000 in sanctions against Garrett "[d]ue to [procedural] defects cited and due to the violation of the Court's previous directives ... and due to the fact that the Court views [the Subpoena] as unduly burdensome under all the circumstances."  (*Id.* at 175-76.)

As an initial matter, the Bankruptcy Court found that the Subpoena was procedurally defective for a number of reasons, including that: (a) it failed to give notice because it did not list any person to testify and merely required someone from DDR to testify; (b) the proof of service and declarations were not properly filled out; (c) it noticed an improper date for the deposition; and (d) it did not tender the necessary witness fees and filing fees.  (*Id.* at 142.)  These are all procedural violations and valid reasons for quashing a subpoena or granting a protective order.

---

[2]  White-Robinson also argues that "[w]ithout factual or legal basis, the bankruptcy court refused to make a determination on Debtor's Motion for Protective Order."  (Doc. 15 at 5.)  The Bankruptcy Court found that White-Robinson "did [not] file a motion to quash.  You filed a response where at the back of it you stuck a motion to quash."  (Doc. 1-3 at 178.)  The Bankruptcy Court's hearing on October 3, 2011 was in regard to DDR's Motion to Quash only according to the court's Notice of Hearing filed on September 29, 2011.  (Docs. 1-1 at 6; 1-2 at 102.) White-Robinson's alleged Motion for Protective Order was contained in her Response to DDR's Motion to Quash which was filed the day after the Notice, on September 30, 2011.  (Doc. 1-2 at 115-19.).  Thus, White-Robinson's Motion to Quash, if even properly filed, was not before the Bankruptcy Court for hearing on October 3, 2011.

[3]  The Court notes that these are the same arguments White-Robinson made in her Response to DDR's Motion to Quash.  (Doc. 1-2 at 110-13.)

*See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."); Fed. R. Civ. P. 45(b) ("Serving a subpoena requires delivering a copy to the *named person* and, if the subpoena requires *that person's* attendance, *tendering the fees for 1 day's attendance and the mileage allowed by law*." (emphasis added).) Additionally, the Bankruptcy Court found, that the Subpoena request was unduly burdensome for a number of reasons including the improper new discovery requests.[4]  (Docs. 1-1 at 19; 1-3 at 176.)  After reviewing the parties' briefing, the evidence and the applicable law, the Court agrees that the Subpoena was properly quashed. Therefore, the Court finds that the Bankruptcy Court did not abuse its discretion in granting DDR's Motion to Quash and for Protective Order.

White-Robinson next argues that the Bankruptcy Court failed to determine whether DDR met and conferred in regard to its Motion to Quash.  A Certificate of Conference filed with the Motion states that counsel for DDR attempted to contact Garrett two times by email and two times by phone without success before filing the Motion.  (Doc. 1-2 at 87.)  Garrett concedes in her appeal brief that she received at least one telephone message from DDR's counsel prior to the filing of the Motion to Quash.  (Doc. 15 at 13.)  She provides no other evidence or argument to support her claim.  Therefore, the Court finds White-Robinson's argument unpersuasive.

White-Robinson finally argues that the Bankruptcy Court erred in awarding a $5,000 sanction against Garrett because it was a violation of her due process rights.  As discussed above, the Bankruptcy Court awarded the sanction after the October 3, 2011 hearing based on Garrett's violation of previous court orders, the federal rules, and abuse of the discovery process.  (Docs.

---

[4] DDR repeatedly argued, in both its Motion [doc. 1-2 at 85-86] and at the October 3, 2011 hearing [doc. 1-3 at 144-49], that White-Robinson's document requests within the Subpoena were overly broad and unduly burdensome.

1-1 at 18-19; 1-3 at 175-76.)  Contrary to her argument, Garrett was provided an opportunity to fully brief the issues, present evidence, and argue before the Bankruptcy Court in regard to the Subpoena at issue in this appeal and whether sanctions were proper.  *Compare Kelcher v. Newhouse (In re MD Promenade)*, No. 3:09-cv-805-D, at 10-12 (N.D. Tex.  Oct. 28, 2009) (Fitzwater, J.) (finding that a party did not have an opportunity to be heard regarding the imposition of sanctions where the party sanctioned did not have an opportunity to argue or present evidence in regard to those specific sanctions).  The Bankruptcy Court had already warned Garrett at the August 22, 2011 hearing regarding the possibility of awarding sanctions against her based on her filing of frivolous motions.  (Doc. 1-3 at 77, 81.)  Additionally, as a member of the Texas state bar and a federal practitioner, she should be familiar with the availability of sanctions for violations of the federal rules, the bankruptcy rules, or the local rules.  *See Merriman v. Security Ins. Co.*, 100 F.3d 1187, 1191 (5th Cir. 1996) ("An attorney who files court papers with no basis in fact needs no more notice than the existence of Rule 11 itself."); *see also* 11 U.S.C. § 105(a); 28 U.S.C. § 1927; Fed. R. Civ. P. 11 & 37(b)(2)(C); Fed. R. Bankr. P. 9011 & 7037; *In re Case*, 937 F.2d 1014 (5th Cir. 1991).

Garrett repeatedly argues matters that are irrelevant to the issues on appeal and for which she provides limited—if any—factual or legal support.  When Garrett does refer to the facts in the underlying bankruptcy case, she merely reargues her case and does not point to any issues of error or abuse of discretion by the Bankruptcy Court.  Based on the parties' briefing, the evidence, and the applicable law, the Court finds that the Bankruptcy Court acted within its discretion and did not err in granting DDR's Motion to Quash or in awarding the $5,000 sanction against Garrett.  The Bankruptcy Court's Motion to Quash Order is AFFIRMED.

## C. Appeal of the Motion for Contempt Order

White-Robinson next appeals the Bankruptcy Court's Order denying her Motion for Contempt dated October 13, 2011. (Doc. 1-5 at 23.) The Bankruptcy Court held two separate hearings in regard to the Motion for Contempt; one on August 22, 2011 and another on October 6, 2011.[5] At the August 22, 2011 hearing, the Bankruptcy Court heard testimony by Mr. Yaquinto, the trustee in White-Robinson's Chapter 7 bankruptcy. He testified that he, acting as the Chapter 7 trustee of the bankruptcy estate, told both the debtor and the creditors "everything is the property of the estate and that nobody's to touch anything [after the bankruptcy petition date]." (Doc. 1-3 at 40.) The Bankruptcy Court also heard testimony from Jerry Donahue, DDR's collection specialist assigned to White-Robinson's account. (*Id.* at 83.) He testified that he did not contact White-Robinson or Garrett at all after he had knowledge of White-Robinson's filing for bankruptcy. (*Id.* at 87-92, 97, 100-03.) Donahue also testified that the single account statement sent by DDR to White-Robinson on April 15, 2011 was the only correspondence sent to her by DDR after the bankruptcy petition date and that it was sent in error based on a faulty IT system test. (*Id.* at 93-95.) At the hearing on October 6, 2011, the Bankruptcy Court also heard testimony from Debtor White-Robinson. She stated that she did not receive any phone calls from DDR after the bankruptcy petition date and only received the single statement from DDR on April 15, 2011. (No. 3:12-cv-266-P, doc. 1-8 at 32, 35, 79-80.) Additionally, she stated the only pertinent contact with DDR she had after the bankruptcy petition date was when she called Donahue on April 20, 2011. (*Id.* at 40-43.)

---

[5] The August 22, 2011 hearing transcript is in the appeal record in the instant case [doc. 1-3 at 8-179] and the October 6, 2011 hearing transcript is in in the appeal record in the 3:12-cv-266-P case [doc. 1-8 at 13-187].

After hearing all of the evidence, the Bankruptcy Court held that: (1) White-Robinson did not meet her burden to show she was injured by a violation of the automatic stay under 11. U.S.C. § 362(k); (2) DDR did not willfully violate the automatic stay; (3) to the extent that DDR took any action that was prohibited by the automatic stay, such action constituted technical violations only and were de minimus; and (4) White-Robinson was not damaged by DDR's actions.[6] (Doc. 1-5 at 27-28; 204-02.) The Bankruptcy Court then denied White-Robinson's Motion for Contempt. (*Id.* at 28.)

White-Robinson bears the burden of demonstrating that a finding of fact by the bankruptcy court is clearly in error. *Perry,* 345 F.3d at 309. She lists ten issues, with separate subparts, regarding alleged errors in the Bankruptcy Court's denial of her Motion. (Doc. 14 at 7-8.) White-Robinson's arguments, however, ask the Court to reweigh the evidence and find a different outcome—but this is not the role of the district court in this case. Sitting as a court of appeal, the district court gives due regard to the opportunity of the Bankruptcy Court to weigh the evidence and determine the credibility of the witnesses. *In re Dennis,* 330 F.3d at 701; *In re Young*, 995 F.2d at 548 (quoting Fed. R. Bankr. P. 8013). Absent clear error, the district court will not disturb the Bankruptcy Court's findings of fact.

After reviewing the parties' briefing, the appellate record, and the applicable law, the Court finds that the Bankruptcy Court did not err or abuse its discretion in denying White-Robinson's Motion for Contempt. The totality of evidence in the appellate record clearly supports a denial of the Motion because there is insufficient evidence that a violation of the automatic stay occurred or that White-Robinson suffered *any* damages. As with her first appeal

---

[6] The Bankruptcy Court also found that the Motion for Contempt suffered from numerous procedural deficiencies. (No. 3:12-cv-482-P, doc. 1-9 at 167.)

brief, Garrett reargues the evidence but she provides no persuasive legal or factual basis for overturning the Bankruptcy Court's Order. Because there is ample evidence in the appellate record in support, the Bankruptcy Court's Order denying White-Robinson's Motion for Contempt is AFFIRMED.

### D. Appeal of the Sanctions Order

Garrett also appeals the December 6, 2011 Sanctions Order directing her to pay $20,000 in attorney's fees to DDR based on the frivolous Motion for Contempt. Garrett argues that "the bankruptcy court may not expect an attorney to have 20/20 hindsight where no evidence was presented or suggested that [she] knew her client's arguments would fail at the time of filing." (Doc. 21 at 14.) Like many of the other alleged issues raised on appeal, this legal axiom is inapposite to the instant case. The Motion for Contempt alleged that DDR committed egregious violations of the automatic stay after White-Robinson filed her bankruptcy petition. (Doc. 1-2 at 8-18.) These allegations turned out to be contrary to the evidence presented at the hearings on August 22, 2011, October 3, 2011, and October 6, 2011, however, as the Bankruptcy Court found that the Motion for Contempt was "not supported by the evidence and [Garrett], upon reasonable inquiry, should have known there was no evidentiary support."[7] (No. 3:12-cv-482-P, doc. 1-9 at 163.) White-Robinson, Garrett's sole source of the information that formed the factual basis for her motion, testified that she was not contacted by DDR after she filed for bankruptcy and only received a single statement from DDR on April 15, 2011—which, the evidence showed, was due to a computer error. (No. 3:12-cv-266-P, doc. 1-8 at 32, 35, 79-80.)

---

[7] The Bankruptcy Court also noted Garrett's 'potentially' vexatious behavior during discovery and proceedings leading up to the hearings on the Motion for Contempt. To list a few: (1) Garrett made 329 objections during a single deposition and (2) Garrett 'blocked' opposing counsel's email address and contacted the police because she considered his emails 'criminal harassment.' (No. 3:12-cv-482-P, doc. 1-9 at 169.)

After reviewing the evidentiary record, the Court agrees that a reasonable investigation into the factual basis of the Motion for Contempt, performed at the time it was filed, would have shown that there had been no violation of the automatic stay or harm to the Debtor necessitating sanctions and court intervention.   At a minimum, the testimony of Garrett's own client was available at the time she filed the Motion for Contempt against DDR.   Taking the evidence as a whole, and especially in light of Garrett's other frivolous objections and delay tactics,[8] the Court finds that the Bankruptcy Court did not err in awarding sanctions against Garrett based on her frivolous Motion for Contempt.

Garrett next argues that the Bankruptcy Court did not have the authority to impose sanctions to be paid to DDR.   Federal Rule of Bankruptcy Procedure 9011(b) states:

> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances*,--(1) *it is not being presented for any improper purpose* [and] (3) *the allegations and other factual contentions have evidentiary support.*

Fed. R. Bank. P. 9011(b) (emphasis added).   Title 28 U.S.C. § 1927 states "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   28 U.S.C. § 1927.[9]   Based on statutory and procedural rules, the Bankruptcy Court had authority to sanction Garrett based on her actions.

---

[8] In addition to footnote 7, the Bankruptcy Court details these in its Sanctions Order including misstatements of the facts, misstatements of the law, and failure to follow procedural rules.   (No. 3:12-cv-482-P, doc. 1-9 at 166-69.)

[9] *See also* 11 U.S.C. § 105(a); Fed. R. Bank. P. 9011(c).

After full briefing and an opportunity to present evidence and argument[10] regarding the Show Cause Order, the Bankruptcy Court found that numerous statements in the Motion for Contempt were "not supported by the evidence and [Garrett], upon reasonable inquiry, should have known there was no evidentiary support." (No. 3:12-cv-482-P, doc. 1-9 at 163-64.) The Bankruptcy Court awarded partial attorney fees to DDR in the amount of $20,000 based on its authority under 28 U.S.C. § 1927. Based on the parties' briefing, the evidence in the record, and the applicable law, the Court finds that sanctions were proper in the instant case and the Bankruptcy Court did not abuse its discretion in awarding them against Garrett. The Court AFFIRMS the Bankruptcy Court's Sanctions Order.

## III.    Conclusion

For the foregoing reasons, the Court AFFIRMS the judgment of the Bankruptcy Court.

**IT IS SO ORDERED.**

Signed this _13th_ day of November, 2012.

_Jorge A. Solis_
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[10] At the show cause hearing, Garrett chose to rest on her Response. (No. 3:12-cv-482-P, doc. 1-9 at 163.)